Maynard K. Baird and Dorothy Baird v. Commissioner.
Baird v. Commissioner
Docket No. 86820.
United States Tax Court
T.C. Memo 1962-211; 1962 Tax Ct. Memo LEXIS 98; 21 T.C.M. (CCH) 1135; T.C.M. (RIA) 62211; September 6, 1962
*98 Petitioner Maynard K. Baird, a union representative for AFL-CIO and I.A.T.S.E., received reimbursement for expenses and per diem allowances which were not reported on his 1956, 1957, and 1958 income tax returns. Held: 1. Such amounts were includable in gross income. 2. Offsetting deductions for actual expenses determined. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). L. B. Bolt, Jr., Esq., 503 Empire Bldg., Knoxville, Tenn. *99 , for the petitioners. Robert B. Milsten, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income taxes of petitioners for the years 1956, 1957, and 1958 in the amounts of $587.10, $426.95, and $602.46, respectively. By amended answer, respondent claimed additional deficiencies for the years 1956 and 1957 in the amounts of $219.60 and $451.92, respectively. At the time of trial, petitioners conceded that the amounts of per diem, travel allowances, and alleged reimbursement for expenses reflected in the records of Baird's employers were in fact received by him. Respondent based his determination of deficiencies, as well as the claim for additional deficiencies contained in his amended answer, on these amounts. Petitioners conceded further that such amounts were not reported on their income tax returns for the years in issue. Accordingly, the only issues for determination are (1) whether petitioners realized unreported income by reason of receipt of the above-mentioned amounts, and (2) whether petitioners are entitled to offsetting deductions, and, if so, in what amounts. Findings of Fact
*100 The parties have stipulated certain facts. The stipulation and exhibits attached thereto are incorporated herein by this reference. Maynard K. Baird and Dorothy are husband and wife. During the years involved they resided in Knoxville, Tennessee, and filed joint income tax returns for the taxable years 1956, 1957, and 1958 with the district director of internal revenue in Nashville, Tennessee. Petitioners filed both an original and an amended return for the year 1957. Maynard K. Baird (sometimes hereinafter referred to as petitioner) was employed as a labor union representative during each of the years in question by both the American Federation of Labor and Congress of Industrial Organizations (hereinafter referred to as AFL-CIO) and the International Alliance of Theatrical Stage Employes and Moving Picture Machine Operators of the United States and Canada (hereinafter referred to as I.A.T.S.E.). While petitioner reported his salaries, he did not set forth on his tax returns any of the amounts received from I.A.T.S.E. and AFL-CIO for per diem and alleged reimbursement of expenses; nor did he set forth any expenses incurred. During the years involved petitioner received *101 the following amounts as salaries from his employers: Year
AFL-CIO
I.A.T.S.E.
Totals
1956
$6,360 (including bonus)
$2,816.84
$ 9,176.84
1957
6,760 (including bonus)
3,200.01
9,960.01
1958
7,280
3,466.66
10,770.66 *
In addition to his salary and separately from it, petitioner received the following amounts of per diem allowances and allowances or alleged reimbursements for travel expenses from AFL-CIO: Public Trans-
Car
Tele-
Miscel-
Year
Hotel
Per Diem
portation
Allowance
phone
laneous
Totals
1956
$266.14
$1,756.00
$3.09
$174.86
$99.55
$7.15
$2,306.79
1957
110.39
1,702.50
77.08
1,889.97
1958
249.67 *
In addition to his salary and separately from it, petitioner received the following amounts of per diem allowances and allowances or alleged reimbursements for travel expenses from I.A.T.S.E.: Per Diem
Alleged
Year
(or Hotel)
Reimbursements
Totals
1956
$1,943
$472.83
$2,415.83
1957
1,995
677.73
2,672.73
1958
2,226
608.02
2,834.02
*102 During the years 1956, 1957, and 1958 AFL-CIO paid petitioner per diem at the rate of $7.50 per day for incidental expenses and restaurant expenses. During these years petitioner did very little traveling for AFL-CIO except to conferences and staff meetings in Nashville, Tennessee. The union paid his hotel bills for these conferences and petitioner personally incurred no hotel expenses whatsoever in his work for AFL-CIO. The $7.50 per diem allowance was paid to petitioner while he was in the town of or at home in Knoxville. Some of petitioner's personal lunches and dinners in the Knoxville area were paid for out of this per diem allowance. Petitioner's work for AFL-CIO was almost entirely in the jurisdiction of Knoxville during these years. Union rules provided that he could not go more than 50 miles from Knoxville. In addition to the $7.50 per diem allowance paid petitioner while he was in town, AFL-CIO also paid for his telephone calls. If he went out of his home town of Knoxville, they paid his hotel bills. AFL-CIO paid for petitioner's automobile transportation as follows: Until the middle of 1956 he was paid a mileage allowance of either six or seven cents per mile *103 for use of his own car. From mid-1956 through the years in issue he used a rental car which AFL-CIO furnished. AFL-CIO provided petitioner with credit cards. Gasoline, oil, and car servicing were charged directly to the union. Petitioner did not account to AFL-CIO for the disposition of the $7.50 per diem allowance and did not keep any records showing how he spent the $7.50 per diem. I.A.T.S.E. paid petitioner a per diem allowance of $21 for special assignments for that union. On the days when petitioner worked on I.A.T.S.E. assignments as well as on his regular AFL-CIO work, he received both the $7.50 per diem from AFL-CIO and the $21 per diem allowance from I.A.T.S.E. Petitioner does not have a record of how many times this occurred. I.A.T.S.E. paid petitioner's transportation expenses directly. They furnished him with an air travel card which he used to charge his air transportation directly to the union, which paid the bill. Ninety-five percent of his travel was by airplane. Petitioner paid his own hotel bills out of the $21 per diem. I.A.T.S.E. paid petitioner's telephone and all transportation expenses directly and separately. Those expenses did not come out of the *104 $21 per diem they paid him. Petitioner's diaries and books for both 1957 and 1958 contain noncontemporaneous entries and entries made by petitioner's son. Petitioner's I.A.T.S.E. record for 1957 contains only hand-printed entries made by petitioner's son, contains no entries made by petitioner, and all entries were made only three or four months prior to the trial of this case. Petitioner's records for 1956 had been lost and were not available at the trial. Petitioner's records for 1957 and 1958 show total payments for alleged I.A.T.S.E. expenses of $1,908.26 and $1,627.56, respectively. He was paid per diem for the following number of days: AFL-
Year
CIO
I.A.T.S.E.
Totals
1956
234 +
92
326
1957
227
95
322
1958
106
106
Petitioner's records for 1957 and 1958 list alleged expenses for I.A.T.S.E. for 101 days and 105 days, respectively. Petitioner photographed and made recordings of certain union meetings. He did not bill the unions for any expenses relating to these activities because the activities did not constitute part of his official duties. Opinion Petitioner was employed as a union representative by AFL-CIO and I.A.T.S.E. *105 during 1956, 1957, and 1958. Each union paid him a salary. In addition, he was reimbursed by the unions for certain specific expenses and received per diem allowances. Other expenses charged directly to the unions are not in issue. Amounts received as alleged reimbursement for expenses and per diem were not reported by petitioner on his income tax returns. No offsetting expenses were claimed on the returns. Respondent determined deficiencies based on alleged understatements of income for 1956 and 1957 in the amounts of per diem petitioner received from AFL-CIO, and for 1958 in the amount of per diem petitioner received from I.A.T.S.E. plus the amount of reimbursement for expenses petitioner received from AFL-CIO in that year. By amended answer, respondent claimed additional deficiencies for 1956 and 1957 based on alleged understatements of income in the amounts of per diem petitioner received from I.A.T.S.E. in those years. No deficiencies with respect to amounts petitioner received as reimbursement for specific expenses from AFL-CIO in 1956 and 1957 and from I.A.T.S.E. in 1956, 1957, and 1958 are clamed by respondent. There is no controversy as to the amounts received by petitioner, *106 including the additional amounts claimed by respondent in his amended answer. Such amounts are clearly includable in gross income under section 61, Internal Revenue Code of 1954. The only question remaining is a factual one as to which petitioner has the burden. Petitioner contends that the per diem and reimbursed expenses received by him were ordinary and necessary business expenses expended by him on behalf of his employers, and that he is entitled to offsetting deductions for such expenses under section 62(2)(A), Internal Revenue Code of 1954. Petitioner offered in evidence two diary-type memorandum books and two expense-account notebooks for the purpose of showing expenditures made by him in connection with his employment by I.A.T.S.E. during the years 1957 and 1958. The memorandum books are wholly inadequate for the purpose offered, and the expense-account notebooks, while purporting to show detailed amounts expended for meals, hotels, and other incidental expenses away from home, were not contemporaneously kept by petitioner but were admittedly prepared some three or four months before the trial and for the purposes of the trial. *107 Moreover, the entries in the 1957 notebook were made by petitioner's son, and there is no satisfactory evidence as to how any of the amounts recorded in either notebook were arrived at, other than that they were represented as being the recollection of petitioner. The notebooks are admittedly inaccurate in many respects. Petitioner also offered in evidence two diary-type memorandum books for the purpose of showing expenditures made by him in connection with his AFL-CIO employment during the years 1957 and 1958. These books contain neither specification of amounts spent nor clear evidence of activities engaged in and are wholly inadequate. No records were offered by petitioner relating to expenses allegedly incurred by him in connection with his employment by either union in the year 1956. Petitioner's oral testimony did not detail a single specific expenditure for any year and was vague and imprecise. The evidence offered by petitioner is insufficient to establish that he is entitled to offsetting deductions in the total amounts of the per diem and reimbursements received by him. Atzingen-Whitehouse Dairy, Inc., 36 T.C. 173. Cf. Walter I. Geer, 28 T.C. 994. *108 We are satisfied, however, that petitioner did incur some expenses which he met out of his per diem and for which he is entitled to offsetting deductions. His work in Knoxville for AFL-CIO demanded some entertaining and other organizing activities. In the absence of precise proof as to the amounts spent on this and similar union work, and "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making," Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), we have determined that petitioner is entitled to offsetting deductions of $2.50 per day, or one-third of the amount of per diem he received from AFL-CIO in 1956 and 1957. It is likewise clear that petitioner had hotel costs and other business expenses while away from home on I.A.T.S.E. business, which he met out of per diem received from I.A.T.S.E. Again using the Cohan rule, we have determined that petitioner is entitled to offsetting deductions of $15 per day, or 15 / 21sts of the per diem he received from I.A.T.S.E. in 1956, 1957, and 1958. With respect to the $249.67 in alleged reimbursed expenses received by petitioner from AFL-CIO in 1958, we are satisfied, on the record presented, that petitioner *109 was required to account to his employer for these expenditures. Accordingly, under section 1.162-17(b)(1) and (4), Income Tax Regs., he need not have reported this amount on his income tax return for the year 1958, and we find no deficiency with respect thereto. Petitioner argues that the per diem received also need not have been reported by reason of the above-cited regulations. His position is clearly wrong insofar as 1956 and 1957 are concerned, since those regulations apply only to taxable years beginning after December 31, 1957, and no corresponding provisions are to be found for prior years. Compare Regulations 118, section 39.23(a)-2. Section 1.162-17(b)(1) and (4), Income Tax Regs., applicable to the year 1958, gives respondent discretion to approve reasonable business practices which he deems the equivalent of accounting for expenses by an employee to an employer. Where such equivalency exists, the employee may omit reimbursed expenses from his returns. Rev. Rul. 58-453, 1958-2 C.B. 67, 68, issued pursuant to these regulations, provides that an employee who receives per diem for away-from-home expenses "not in excess of 125 percent of the rates authorized *110 to be paid by the Federal Government in the locality in which the travel is performed will be deemed to have been required to account to his employer for such expenses for purposes of such regulations." The applicable Federal per diem rate for 1958 in the area involved was $12. The amount we have allowed petitioner under Cohan ( $15 per day) is the same amount petitioner might have been allowed pursuant to the above ruling. Decision will be entered under Rule 50. Footnotes
*. Includes wages of $24 from Sam R. Rosenbaum, New York.↩
*. Reimbursed expenses in 1958.↩